**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION**

JOSE RAMON ARIAS IRIARTE,

     Petitioner,

v.

CHRISTOPHER BULLOCK, in his official
capacity as Field Office Director,
Enforcement and Removal Operations, New
Orleans Field Office, U.S. Immigration and
Customs Enforcement,

     Respondent.

)
)
)
)
)
)
)
)
)
)
)

No. 2:26-cv-02355-SHL-tmp

---

**ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS**

---

On March 31, 2026, Petitioner Jose Ramon Arias Iriarte filed the Petition for Writ of

Habeas Corpus under 28 U.S.C. § 2241.  (ECF No. 1.)  Arias Iriarte challenges his continued

detention pursuant to 8 U.S.C. § 1225 in the West Tennessee Detention Facility without a bond

hearing as violative of his Fifth Amendment due process rights and the Immigration and

Nationality Act ("INA"), and seeks immediate release.  (ECF No. 10 at PageID 61–62.)  He

contends that his immigration detention falls under 8 U.S.C. § 1226(a), not § 1225.  (ECF No. 10

at PageID 51.)  Respondent Christopher Bullock[1] timely filed his response on April 15, 2026.

(ECF No. 8.)  For the reasons explained below, Arias Iriarte is entitled to immediate release, and

his Petition is **GRANTED**.

---

[1] Respondent states that "Christopher Bullock is the appropriate Respondent because he is now the Field Office Director of the New Orleans Field Office, U.S. Immigration and Customs Enforcement."  (ECF No. 8 at PageID 24 (citation omitted).)  He asks the Court to dismiss respondent Scott Ladwig.  Respondent is correct.  The Clerk is respectfully **DIRECTED** to modify the case caption to reflect that Christopher Bullock is the sole Respondent.

## BACKGROUND

Arias Iriarte is a citizen of Venezuela and entered the United States under unknown circumstances at an unknown time.  (ECF No. 8-2 at PageID 42.)  On December 27, 2021, United States Border Patrol officers encountered Arias Iriarte and issued him a Notice to Appear, which apparently was not prosecuted.  (Id.)  During that encounter, officers "determined that [he] had unlawfully entered the United States," and Arias Iriarte "admitted to being a citizen of Venezuela with no legal right to enter, pass through, work, or remain in the United States legally."  (Id.)

Since his entry, Arias Iriarte has made a life in the U.S.  He has lived in Memphis with his partner since 2022.  (ECF No. 10 at PageID 50.)  He obtained employment authorization and worked during that time, has remained involved in his church community, and has a fifteen-month-old daughter who is a U.S. citizen.  (Id.)  He "has a pending asylum application with" U.S. Citizenship and Immigration Services ("USCIS").  (Id.)

In addition, Arias Iriarte has been arrested for an alleged crime.  According to the Affidavit of Complaint ("warrant affidavit") filed by Respondent, Arias Iriarte approached a man in an apartment complex in Shelby County, Tennessee, on October 27, 2025.  (ECF No. 8-3 at PageID 45.)  The man was Arias Iriarte's romantic partner's ex-husband.  The man alleged that, when he exited his car, Arias Iriarte "walked up to [him], grabbed him by the throat, and squeezed with one hand, and stated[,] 'I'll kill you!'"  (Id.)  This strangulation restricted the victim's breathing for an unknown time, and he averred that "he was in fear for his life."  (Id.)  Arias Iriarte then released the man and drove away.  (Id.)  The man alleged that he recognized Arias Iriarte as "the boyfriend of his ex-wife," whom he had been separated from for three years.  (Id.)  Law enforcement at the scene noted that the man had "[r]ed marks on the left and right

2

sides of his neck, consistent with strangulation by use of one human hand." (Id.)  The man was treated for the choking on the scene.

As a result of the warrant affidavit, a Shelby County Judicial Commissioner issued a warrant for Arias Iriarte's arrest for aggravated assault on October 31, 2025.  (ECF No. 8-3 at PageID 46.)  Arias Iriarte was arrested pursuant to the warrant and detained at the Shelby County Jail sometime between November 2025 and January 2026.  (ECF No. 8-2 at PageID 42.)  He posted bond and his aggravated assault case remains pending.  (Id.)

On January 21, 2026, Immigration and Customs Enforcement ("ICE") officers encountered Arias Iriarte at the Jail immediately after he posted bond.  (Id.)  They served him with a Notice to Appear, which charged him with being an alien present in the United States who has not been "admitted or paroled after inspection by an Immigration Officer" and being "an immigrant not in possession of a valid unexpired visa . . . or other valid entry document."  (ECF No. 8-1 at PageID 37.)  ICE officers arrested him.  At some unknown time, ICE moved Arias Iriarte to the West Tennessee Detention Facility, where he remains now.  Respondent alleges that Arias Iriarte "has a status report date in immigration court scheduled for June 5, 2026."  (ECF No. 8 at PageID 26.)

Arias Iriarte filed the instant Petition on March 31, 2026, arguing that he is improperly detained under 8 U.S.C. § 1225 and is entitled to release or a bond hearing.  (ECF No. 1.)  Indeed, under recently adopted guidance from DHS and ICE, Arias Iriarte is subject to mandatory detention under 8 U.S.C. § 1225(b)(2)(A) of the INA and was allegedly declared ineligible for a bond hearing or release on bond because he is an "applicant for admission" and "arriving alien."  Until recently, however, most noncitizens in his situation were given bond hearings under a different provision, § 1226(a).  See Godinez-Lopez v. Ladwig, No. 25-CV-

3

02962, 2025 WL 3047889, at *1 (W.D. Tenn. Oct. 31, 2025). Section 1226(a) allows

immigration authorities to release immigrants from detention on a bond of $1,500 or more,

unless they require detention for certain reasons. For example, noncitizens with certain criminal

records may not be released on bond. 8 U.S.C. § 1226(c).

Conversely, § 1225(b)(2)(A) prohibits a bond for all "applicants for admission" who are

"seeking admission." "Applicants for admission" has been interpreted to mean recent arrivals,

including those who have not been "physically present in the United States continuously" for the

previous two years. See 8 U.S.C. § 1225(b)(1)(A)(iii)(II) ("An alien described in this clause is

an alien who . . . has not affirmatively shown . . . that the alien has been physically present in the

United States continuously for the 2-year period immediately prior to the date of the

determination of inadmissibility . . . .").

But, on July 8, 2025, ICE, in coordination with the Department of Justice ("DOJ"), issued

a new policy with a novel interpretation of §§ 1225(b)(2)(A) and 1226(a). Interim Guidance

Regarding Detention Authority for Applicants for Admission, AILA (July 8, 2025),

https://www.aila.org/ice-memo-interim-guidance-regarding-detention-authority-for-applications-

for-admission ("For custody purposes, these aliens are now treated in the same manner that

'arriving aliens' have historically been treated."). The policy reclassified all undocumented

immigrants, even those who have lived in the United States for years, as "applicants for

admission." And all "applicants for admission" are required to be detained for removal

proceedings without a bond hearing under § 1225(b)(2)(A).

Thus, ICE's new legal interpretation makes § 1225(b)(2)(A), not § 1226(a), the statute

governing removal proceedings for all immigrants without legal status. As a result, all

undocumented immigrants awaiting removal are detained without a bond hearing. This new

interpretation was later adopted by the Board of Immigration Appeals ("BIA") in a published decision, Yajure Hurtado, 29 I. & N. Dec. 216, 220 (B.I.A. 2025).

In a supplemental briefing, filed because the arguments in the Petition are unclear (see ECF No. 6), Arias Iriarte alleges that his mandatory detention violates his Fifth Amendment due process rights, that mandatory detention under 8 U.S.C. § 1225 is unlawful, and that his arrest for aggravated assault does not fall within the scope of 8 U.S.C. § 1226(c) to justify mandatory detention.[2]  (ECF No. 10.)  He seeks immediate release.  (Id. at PageID 59.)  In opposition, Respondent contends that (1) Arias Iriarte should be required to exhaust administrative remedies; (2) § 1225 applies to him; (3) alternatively, § 1226(c)(1)(E)(ii) applies to him; (4) his detention does not violate his Fifth Amendment rights; and (5) a bond hearing is the appropriate remedy if the Petition is granted.  (ECF No. 10 at PageID 50–51.)

## ANALYSIS

"Habeas relief is available when a person is 'in custody in violation of the Constitution or laws or treaties of the United States.'"  Lopez-Campos v. Raycraft, No. 25-CV-12486, 2025 WL 2496379, at *3 (E.D. Mich. Aug. 29, 2025) (quoting 28 U.S.C. § 2241(c)(3)), aff'd, No. 25-1965, 2026 WL 1283891 (6th Cir. May 11, 2026).  Because prudential exhaustion is a threshold matter, this Section first considers whether Arias Iriarte should have exhausted his administrative remedies in the immigration courts.  Then, the statutes are construed to determine whether §1225 or § 1226 is applicable.  The Court then determines whether the mandatory detention provision in § 1226(c)(1)(E) applies.  A due process analysis follows, including a brief discussion of the appropriate relief.

---

[2] Arias Iriarte appears to abandon his Fourth Amendment argument in his supplemental briefing.  (ECF No. 10 at PageID 58–59.)  Therefore, that argument is not considered.

I.    **Exhaustion**

If Congress "specifically mandates" exhaustion of administrative remedies, a petitioner

must pursue relief through those administrative processes before seeking habeas relief.

McCarthy v. Madigan, 503 U.S. 140, 144 (1992).  When Congress is silent on administrative

exhaustion, "sound judicial discretion governs."  Id.  Thus, the doctrine of prudential exhaustion

dictates that, in the absence of a textual exhaustion requirement, courts can use discretion to

refuse to hear habeas petitions that challenge bond determinations until a petitioner exhausts

available administrative remedies.  McCarthy, 503 U.S. at 144.  The Sixth Circuit has previously

applied this doctrine to dismiss petitions for lack of jurisdiction.  See Rabi v. Sessions, No. 18-

3249, 2018 U.S. App. LEXIS 19661, at 1–2 (6th Cir. July 16, 2018).  In the context of immigrant

detention, some district courts require detained immigrants to exhaust their administrative

remedies—by appealing bond decisions to the BIA and receiving adverse decisions—before the

courts will review their habeas petitions.  E.g., Villalta v. Greene, No. 25-cv-01594, 2025 U.S.

Dist. LEXIS 169688, at *6–7 (N.D. Ohio Aug. 5, 2025).

In some cases, however, exhaustion is excused, and courts review habeas petitioner

claims.  Courts have reached these conclusions when (1) "the legal question is fit for resolution

and delay means hardship, or (2) exhaustion would prove futile."  Shalala v. Ill. Council on Long

Term Care, 529 U.S. 1, 13 (2000) (citation modified).

An issue is fit for judicial resolution when it presents a purely legal question.  Contreras-

Lomeli v. Raycraft, No. 25-cv-12826, 2025 U.S. Dist. LEXIS 207162, at *8 (E.D. Mich. Oct. 21,

2025) (citing Loper Bright Enters. v. Raimondo, 603 U.S. 369, 385 (2024)).  Further, when

administrative procedures involve "an indefinite or unreasonable timeline," such delays result in

6

hardship.  Id.  If there is a risk of extended, "potentially unlawful detention" during such delay, then exhaustion is excused.  Id.

As for futility, waiver of exhaustion "is appropriate when an administrative agency 'has predetermined the disputed issue' by having a 'clearly stated position' that the petitioner is not eligible for the relief sought."  Id. at *9 (quoting Cooper v. Zych, No. 09-CV-11620, 2009 U.S. Dist. LEXIS 75423, at *2 (E.D. Mich. Aug. 25, 2009)).

Respondent argues that the Court should dismiss the Petition based on prudential exhaustion, as Arias Iriarte has not appealed and received an adverse decision from the BIA.  (ECF No. 8 at PageID 27–28.)  He recognizes that Congress has not imposed an administrative exhaustion requirement, and that "sound judicial discretion governs."  (Id. at PageID 27 (citing McCarthy v. Madigan, 503 U.S. 140, 144 (1992)).  Respondent requests use of that discretion because it would allow the agencies involved "to apply their special expertise in interpreting . . . statutes" and would "promote[] judicial efficiency."  (Id.)

In opposition to the exhaustion argument, Arias Iriarte asserts that the relevant statutes do not contain an exhaustion requirement.  (ECF No. 10 at PageID 53.)  He contends that the Court should not require exhaustion because that decision is discretionary, exhaustion would be futile, and the Petition presents primarily legal issues.  (Id. at PageID 54.)

Neither 8 U.S.C. §§ 1225 nor 1226 contain a textual exhaustion requirement for immigrants in ICE custody.  Similarly, 28 U.S.C. § 2241 lacks an exhaustion requirement.  And the Sixth Circuit has not yet spoken on the issue of prudential exhaustion in these recent cases.  E.g., Castaneda-Mondragon v. Acuna, No. 25-cv-03044, ECF No. 13 at PageID 101 (W.D. Tenn. Dec. 30, 2025).  Therefore, exhaustion may only be required here based on "sound judicial discretion."  McCarthy, 503 U.S. at 144.  But exhaustion may be excused if "the legal question is

7

fit for resolution and delay means hardship, or exhaustion would prove futile." Shalala, 529 U.S. at 13.

Arias Iriarte's failure to exhaust is excused. First, the question he poses in the Petition is fit for resolution and undue delay would impose hardship on him. The Parties do not dispute any material facts. (ECF Nos. 8 at PageID 26; 10 at PageID 49–51.) Thus, deciding which statute applies to Arias Iriarte's detention is a purely legal question, "which is right in a federal court's wheelhouse." Contreras-Lomeli, 2025 U.S. Dist. LEXIS 207162, at *8; see also Loper Bright Enters. v. Raimondo, 603 U.S. 369, 398–402 (2024). Further, if he is required to pursue an appeal with the BIA, his appeal process would likely take six months or more. See Contreras-Lomeli, 2025 U.S. Dist. LEXIS 207162, at *8 (citing Pizarro Reyes v. Raycraft, No. 25-CV-12546, 2025 U.S. Dist. LEXIS 175767, at *9 (E.D. Mich. Sep. 9, 2025)). Bond hearings were designed to prevent prolonged detention during removal proceedings, which are often lengthy. Reyes, 2025 U.S. Dist. LEXIS 175767, at *9 (citations omitted). Therefore, denying Arias Iriarte the chance to obtain relief simply because he did not file an appeal may force him "to endure six months or more of potentially unlawful detention and thus would cause him great hardship." Contreras-Lomeli, 2025 U.S. Dist. LEXIS 207162, at *8.

Furthermore, the futility of exhaustion is an independent reason to excuse exhaustion here. The BIA stated in Yajure Hurtado that § 1225(b)(2)(A) applies to detained illegal immigrants who "have been residing in the United States for years." 29 I. & N. Dec. at 220–21. As Arias Iriarte highlights, Memphis IJs "have denied bond requests precisely on that basis, stating that they lack jurisdiction to redetermine custody for non-admitted detainees." (ECF No. 10 at PageID 53.) Thus, an appeal to the BIA would be futile.

8

II.    **Statutory Interpretation**

A.    **Sections 1225 and 1226**

"A statute should be construed so that effect is given to all its provisions, so that no part will be inoperative or superfluous, void[,] or insignificant." Corley v. United States, 556 U.S. 303, 314 (2009) (quoting Hibbs v. Winn, 542 U.S. 88, 101 (2004)).  Each word within a statute must be given "'its ordinary, contemporary, common meaning,' while keeping in mind that 'statutory language has meaning only in context.'" Kentucky v. Biden, 23 F.4th 585, 603 (6th Cir. 2022) (citation modified) (citing Walters v. Metro. Edu. Enters., Inc., 519 U.S. 202, 207, (1997)).

Custody over noncitizens during removal proceedings is generally governed by two statutes, 8 U.S.C. § 1225 (entitled "Inspection by immigration officers; expedited removal of inadmissible arriving aliens; referral for hearing") and § 1226 (entitled "Apprehension and detention of aliens").  Section 1225(b) requires mandatory detention, providing in relevant part:

> (b)    Inspection of applicants for admission
>        . . .
>    (2)    Inspection of other aliens
>        (A)    In general
>            Subject to subparagraphs (B) and (C), in the case of an alien who is an applicant for admission, if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained for a proceeding under section 1229a of this title.

8 U.S.C. § 1225(b)(2)(A) (emphasis added).  An "applicant for admission" is a noncitizen "present in the United States who has not been admitted."  8 U.S.C. § 1225(a)(1).  Under this section, all applicants for admission "shall be detained."  Id. § 1225(b)(2)(A).

Section 1226(a), on the other hand, allows for discretionary detention, providing in relevant part:

(a)     Arrest, detention, and release
        On a warrant issued by the Attorney General, an alien <u>may</u> <u>be</u> <u>arrested</u> <u>and</u>
        <u>detained</u> pending a decision on whether the alien is to be removed from the
        United States.   Except as provided in subsection (c) and pending such
        decision, the Attorney General—
        (1)     <u>may</u> <u>continue</u> <u>to</u> <u>detain</u> the arrested alien; and
        (2)     <u>may</u> <u>release</u> the alien on—
                (A)     bond of at least $1,500 with security approved by, and
                        containing conditions prescribed by, the Attorney General .
                        . . .

8 U.S.C. § 1226(a) (emphasis added).  The exception in § 1226(c) prohibits releasing on bond a

noncitizen found to be inadmissible, who <u>also</u>,

> is charged with, is arrested for, is convicted of, admits having committed, or admits
> committing acts which constitute the essential elements of any burglary, theft,
> larceny, shoplifting, or assault of a law enforcement officer offense, or any crime
> that results in death or serious bodily injury to another person . . . .

<u>Id.</u> § 1226(c)(1)(E)(ii).  "Noncitizens arrested and detained under § 1226 have a right to request a

custody redetermination (i.e., a bond hearing) before an IJ."  <u>Lopez-Campos</u>, 2025 WL 2496379,

at *4 (citing 8 C.F.R. § 1236.1(c)(8), (d)(1)) (citation modified).  "The IJ evaluates whether there

is a risk of nonappearance or danger to the community."  <u>Id.</u> (citing <u>Guerra</u>, 24 I. & N. Dec. 37,

40 (B.I.A. 2006)).  Thus, except for those noncitizens with a record of certain criminal offenses,

§ 1226(a) allows immigration authorities to choose to release or detain noncitizens, subject to a

hearing before an IJ on the issue.[3]

Arias Iriarte argues that ICE's new interpretation of § 1225(b) violates the Fifth

Amendment, because he is "detained in the interior during ongoing section 240 proceedings."

---

[3] <u>See</u> 8 C.F.R. § 1236.1(c)(8), (d)(1) ("Any officer authorized to issue a warrant of arrest
may, in the officer's discretion, release an alien . . . .  After an initial custody determination . . .
the respondent may . . . request amelioration of the conditions under which he or she may be
released. . . .  [T]he immigration judge is authorized . . . to detain the alien in custody, release the
alien, and determine the amount of bond, if any, under which the respondent may be released . . .
.").

(ECF No. 10 at PageID 51–52.)  He highlights that he is an interior resident who has lived in Tennessee for years, a pending asylum application, an employment authorization document, and a family.  (Id. at PageID 52.)  As a result, Arias Iriarte argues, he presents the "classic interior detention" circumstances in which § 1226(a) has traditionally applies to undocumented immigrants.  (Id.)

Respondent argues that § 1225(b)(2)(A), not § 1226(a), applies to Arias Iriarte because he is still "an 'applicant for admission' who is treated, for constitutional purposes, as if stopped at the border." [4]  (ECF No. 8 at PageID 29.)  As a result, he asserts that Arias Iriarte "is subject to mandatory detention and not entitled to a bond hearing."  (Id.)  For support, he relies on Yajure Hurtado, in which the BIA decided that the plain language of § 1225(b) deprives IJs of jurisdiction to "hear bond requests" of immigrants without entry documentation like Arias Iriarte.  (Id. (citation omitted).)  Respondent also argues that the decisions in Gonzalez v. Ladwig, No. 26-cv-02017, 2026 WL 413602 (W.D. Tenn. Feb. 13, 2026) and Buenrostro-Mendez v. Bondi, No. 25-20496, 2026 WL 323330 (5th Cir. Feb. 6, 2026), support ICE and DHS's application of § 1225 to Arias Iriarte.  (Id. at PageID 30.)

The plain text of §§ 1225(b)(2)(A) and 1226(a) do not support Respondent's contention that Arias Iriarte is an "applicant for admission."  Beginning with the titles, the title of § 1225 is "Inspection by immigration officers; expedited removal of inadmissible arriving aliens; referral for hearing."  The title of § 1226(a) is "Apprehension and detention of aliens."  Although titles of

---

[4] Respondent invokes the "entry fiction" in his discussion of the statutory issue and due process.  That doctrine holds that an undocumented immigrant who is briefly stopped near the border at or soon after entry, remains considered "stopped at the border" even after being paroled into the United States."  Bahena v. Trump, NO. 25-223, 2026 U.S. Dist. LEXIS 23861, at *21–23 (E.D. Ky. Feb. 5, 2026); Dep't of Homeland Sec. v. Thuraissigiam, 591 U.S. 103, 139 (2020).  The entry fiction doctrine does not apply here, because Respondent has not shown that Arias Iriarte belongs to one of the three categories triggering application of that doctrine.

11

statutes are not controlling, they are "tools available for the resolution of a doubt about the meaning of a statute." Dubin v. United States, 599 U.S. 110, 121 (2023) (citation modified). Here, § 1225's title describes "arriving aliens" who are placed into "expedited removal" proceedings. However, Arias Iriarte was not "arriving" when he was detained by ICE in the Shelby County Jail in 2026, after having been in this country for over four years. (See ECF No. 8-2 at PageID 42 (listing Arias Iriarte's first encounter with ICE as having taken place in December 2021).) Also, the record does not show that he was eligible for expedited removal proceedings. It follows, then, that § 1225 does not apply here.

Moreover, § 1225's subject matter undercuts Respondent's reading of the statute. Section 1225 describes the process of inspecting and removing immigrants actively crossing the border. See Jennings v. Rodriguez, 583 U.S. 281, 287 (2018) ("That process of decision [described in § 1225] generally begins at the Nation's borders and ports of entry, where the Government must determine whether an alien seeking to enter the country is admissible."). And Respondent's interpretation of § 1225(b)(2)(A) ignores several words and phrases within the statute itself. "If possible, every word and every provision is to be given effect." Antonin Scalia & Bryan A. Garner, Reading Law: The Interpretation of Legal Texts 174 (2012). But to apply § 1225(b)(2)(A) to Arias Iriarte would render the following underlined words superfluous:

> [I]n the case of an alien who is an applicant for admission, if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained for a proceeding under section 1229a of this title.

8 U.S.C. § 1225(b)(2)(A) (emphasis added). The record does not show that Arias Iriarte was seeking admission at the border at his arrest, nor does it show that he had received a determination by an immigration officer at the border that he was "not clearly and beyond a doubt entitled to be admitted." The language of § 1225(b)(2)(A) makes sense in the context of

12

the border, but not in a situation like this, when a noncitizen has been physically present, albeit

unlawfully, for three years.  It would be untenable to interpret "applicant for admission" using its

ordinary meaning, while doing so outside the context of the provision.

Also, Respondent's interpretation of § 1225(b)(2)(A) would render § 1226(c)

superfluous.  That subsection carves out an exception to the general rule in § 1226(a)(2) that an

arrested noncitizen is eligible for a bond.  Under subsection (c), a noncitizen with a certain

criminal history must be mandatorily detained without bond.  8 U.S.C. § 1226(c)(1)(E)(ii) ("The

Attorney General shall take into custody any alien who . . . is charged with, is arrested for, is

convicted of, admits having committed, or admits committing acts which constitute the essential

elements of any burglary, theft, larceny, shoplifting, or assault of a law enforcement officer

offense, or any crime that results in death or serious bodily injury to another person . . . .").  But,

under Respondent's reading of § 1225, all arrested noncitizens must be detained without bond.

Thus, § 1226(c) would have no purpose.  Yet, courts must "give effect, if possible, to every

clause and word of a statute."  Duncan v. Walker, 533 U.S. 167, 174 (2001).  Arias Iriarte's

interpretation of the statutes is the only one compatible with the presence of § 1226(c).

The plain language of § 1226(a) describes Arias Iriarte's situation.  That section applies

to the "apprehension and detention of aliens," providing that, upon "a warrant issued by the

Attorney General, an alien may be arrested or detained pending a decision on whether the alien is

to be removed from the United States."  8 U.S.C. § 1226(a).  Arias Iriarte was charged with

being removable and detained in West Tennessee.  Thus, the Attorney General has discretion

under this section.  They "may continue to detain [him]" or they "may release [him] on bond."

Id.  But the Attorney General may not deny him the bond hearing to which he is entitled.  See 8

C.F.R. § 1236.1(c)(8), (d)(1).

13

Not only is the plain language of §§ 1225 and 1226 sufficient to support a finding in Arias Iriarte's favor, but the Congressional intent behind § 1226(a) is also supportive. In 2025, Congress passed the Laken Riley Act, adding a subsection to § 1226(c) to preclude persons with specific criminal histories from receiving bond. Pub. L. No. 119-1, 139 Stat. 3 (2025). Congress would not have added exceptions to the broad rule of § 1226(a) if, as Respondent asserts, it intended § 1226(a) to give way to § 1225(b)(2)(A) in all cases. See Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co., 559 U.S. 393, 400 (2010) ("The fact that Congress has created specific exceptions to [a rule] hardly proves that the [rule] does not apply generally. In fact, it proves the opposite."). On the contrary, Congress's recent attention to § 1226 points to its approval of the interpretation prevailing before July 2025. After all, "[i]f § 1225(b)(2) already mandated detention of any alien who has not been admitted, regardless of how long they have been here, then adding § 1226(c)(1)(E) to the statutory scheme was pointless." Lopez-Campos, 2025 WL 2496379, at *8 (quoting Maldonado v. Olsen, No. 25-cv-3142, 2025 WL 237441, at *12 (D. Minn. Aug. 15, 2025)).

For the reasons stated above, the Court disagrees with the recent cases cited by Respondent, including Gonzalez, 2026 WL 413602, which is nonbinding here. Raymond James & Assocs., Inc. v. 50 N. Front St. TN, LLC, 2020 WL 6694299, at *3, *3 n.1 (W.D. Tenn. Nov. 13, 2020) ("Decisions made by district courts within the same district are not binding on one another.") (citing Chinn v. Jenkins, No. 02-cv-512, 2018 WL 488159, at *2 (S.D. Ohio Jan. 19, 2018)). Moreover, Respondent's reliance on Yajure Hurtado in support of his statutory argument fails because the BIA lacks authority to opine on constitutional challenges to agency action. Sterkaj v. Gonzales, 439 F.3d 273, 279 (6th Cir, 2006); see also Loper Bright Enters., 603 U.S. at 398–402 ("The very point of the traditional tools of statutory construction—the tools

14

courts use every day—is to resolve statutory ambiguities.") (explaining that reviewing courts "decide all relevant questions of law and interpret statutory provisions" (citation modified)).

Thus, given the plain language of §§ 1225 and 1226, the arrest and detention of Arias Iriarte, an illegal immigrant who has been continuously present in the United States for over four years, is governed by § 1226, and is subject to the discretionary bond process in that provision.

### B.    Section 1226(c)(1)(E)

The issue remains whether 8 U.S.C. § 1226(a) applies, or, instead, § 1226(c)(1)(E) applies and requires Arias Iriarte's mandatory detention without bond.

As outlined above, 8 U.S.C. § 1226(a) allows for the Attorney General to seek, in their discretion, to keep an immigrant detained or to release the immigrant on a "bond of at least $1,500 with security approved by, and containing conditions prescribed by, the Attorney General." 8 U.S.C. § 1226(a)(1)–(2). On the other hand, 8 U.S.C. § 1226(c) limits that discretion by requiring mandatory detention of "any alien who" satisfies any of five listed categories under exceptions (A) through (E). § 1226(c)(1)(A)–(E).

The LRA, enacted in 2025, amended § 1226(c) by adding exception (E), a list of conditions for a category of aliens who must be detained without bond.[5] Specifically, exception (E) requires the mandatory detention of an alien if they (1) are found to be "inadmissible" and (2) are charged with, arrested for, convicted of, or admit to committing "any burglary, theft, larceny, shoplifting, or assault of a law enforcement officer offense, or any crime that results in

---

[5] Before the LRA's addition, an inadmissible immigrant who had merely been arrested for or charged with a crime was not subject to mandatory detention without bond. 8 U.S.C. § 1226(c)(1)(A)–(C) (2024), amended by, 8 U.S.C. § 1226(c)(1)(A)–(E) (2025). The LRA broadened the categories of noncitizens subject to mandatory detention, adding the language "is inadmissible under paragraph (6)(A), (6)(C), or (7) of § 1182(a) of this title, and is charged with, is arrested for, is convicted of, admits having committed, or admits committing acts . . . ." § 1226(c)(1)(E)(i)–(ii).

death or serious bodily injury to another person." 8 U.S.C. § 1226(c)(1)(E). Under subsection (c)(1)(E), the term "serious bodily injury" has the meaning given in "the jurisdiction in which the act[s] occurred. Id. § 1226(c)(1)(E)(ii).

In Tennessee, "serious bodily injury" is any bodily injury that involves "a substantial risk of death; protracted unconsciousness; extreme physical pain; protracted or obvious disfigurement; protracted loss or substantial impairment of a function of a bodily member, organ, or mental faculty; or a broken bone of a child who is twelve years of age" or younger. See Tenn. Code Ann. § 39-11-106(a)(37).

Respondent argues that, even if § 1225 does not apply to Arias Iriarte, he is subject to mandatory detention because his arrest for aggravated assault is an arrest for a crime that resulted in serious bodily injury. (ECF No. 8 at PageID 31.) Respondent emphasizes that Arias Iriarte allegedly "strangled and threatened to kill the boyfriend of his ex-wife," and that the victim averred that "his breathing was restricted during the altercation" and "he was in fear for his life." (Id. at PageID 31–32.)

In turn, Arias Iriarte contends that Respondent's § 1226(c) "theory assumes that a pending Tennessee criminal charge automatically qualifies" as a crime resulting in serious bodily injury. (ECF No. 10 at PageID 55.) While he acknowledges the allegations in the affidavit of complaint for the assault arrest, he argues that nothing in that affidavit establishes that the victim suffered a serious bodily injury under state law. (Id.) He highlights that Respondent did not analyze whether he caused such injury, despite the victim's alleged restricted breathing.

Respondent's argument as to § 1226(c) fails because his perfunctory argument that Arias Iriarte's detention is mandatory "as an alien arrested for aggravated assault" does not establish that the aggravated assault resulted in serious bodily injury. As an initial point, those criminal

16

proceedings against Arias Iriarte are still pending.  As such, there has not been an adjudication that his strangulation caused that victim serious bodily injury.  Given the absence of an adjudication, Respondent cites no authority establishing that strangulation that restricts a victim's breathing and a contemporaneous fear for once's life meets any of the six statutory definitions for "serious bodily injury."  See Tenn. Code Ann. § 39-11-105(a)(37)(A)–(F).  Nor is the Court aware of any such authority.

Under Tennessee law, causing serious bodily injury is one of several ways to prove the aggravated nature of an assault.  See Tenn. Code Ann. § 39-13-103(a)(1)(A)–(B).  One other way is committing the assault by strangulation.  State v. Currie, No. W2023-00698-CCA-R3-CD, 2024 Tenn. Crim. App. LEXIS 129, at *20–21 (Tenn. Crim. Ct. App. Mar. 26, 2024).  It appears here, however, that the victim's injury was relatively temporary, like others associated with bodily injury, whereas serious bodily injuries are typically permanent in duration or extremely painful.  See State v. Blanton, No. M2015-02311-CCA-R3-CD, 2016 Tenn. Crim. App. LEXIS 623, at *24 (Tenn. Crim. Ct. App. Aug. 22, 2016) (describing bodily injury as an "abrasion, bruise," "physical pain" or temporary impairment).  The record shows that the victim had "[r]ed marks on the left and right sides of his neck," and he received medical attention on the scene.  (ECF No. 8-3 at PageID 45.)  At this stage, and on this record, those injuries do not rise to the extreme level dictated by Tennessee law.

Arias Iriarte may have engaged in a violent action as described in the affidavit of complaint, but Respondent has the burden of showing that his detention is lawful under § 1226(c)(1)(E)(ii) as has failed to meet that burden.  Therefore, § 1226(c)(1)(E)(ii) does not justify his detention without bond.

17

### III.    Due Process

The Fifth Amendment protects every person from being "deprived of life, liberty, or property, without due process of law."  U.S. Const. amend. V.  "The Due Process Clause extends to all 'persons' regardless of status, including non-citizens (whether here lawfully, unlawfully, temporarily, or permanently)."  Lopez-Campos, 2025 WL 2496379, at *9 (citing Zadvydas v. Davis, 533 U.S. 678, 690 (2001)).  In the context of civil immigration detention, the Sixth Circuit applies the balancing test from Mathews v. Eldrige, 424 U.S. 319 (1976), to evaluate the level of process owed a noncitizen.  See, e.g., United States v. Silvestre-Gregorio, 983 F.3d 848, 852 (6th Cir. 2020).  Those factors include (1) "the private interest that will be affected by the official action," (2) "the risk of an erroneous deprivation of such interest," and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail."  Mathews, 424 U.S. at 335.

Arias Iriarte argues that Respondent violates the Due Process Clause of the Fifth Amendment by not affording him a bond hearing.  (ECF No. 10 at PageID 57.)  He argues that his extended detention without a bond determination is now punitive, and nothing in federal immigration detention jurisprudence justifies "months of no-bond detention for a noncitizen with a pending asylum claim, a work permit, a driver license, a U.S.-citizen infant daughter, strong employment history, and no criminal convictions."  (Id.)  He seeks immediate release.  On the other hand, Respondent contends that he has not violated Arias Iriarte's due process rights because Congress has decided that undocumented immigrants are not entitled to bond hearings. (ECF No. 8 at PageID 33.)  According to Respondent, under the entry fiction doctrine, Arias Iriarte is treated "as if stopped at the border," and thus, he has only the due process rights provided by § 1225.  (Id. (quoting Dep't of Homeland Sec. v. Thuraissigiam, 591 U.S. 103, 139

18

(2020)).)  Respondent further argues that, even if Arias Iriarte was unlawfully detained under the wrong statute, such detention is not unconstitutional.  (Id.)

Here, because § 1226(a) applies to Arias Iriarte, he is owed the process given to him under that statute.  As for the Mathews factors, (1) Arias Iriarte has a strong private liberty interest, (2) there is a high risk of erroneous deprivation if no IJ evaluates his risk of flight and danger to the community, and, (3) given Arias Iriarte's liberty at the time of his arrest,[6] it will be difficult for the federal Government to demonstrate an interest in his detention.  Indeed, before he was apprehended, Arias Iriarte was present in the United States for over four years, living in Memphis, working, and establishing a family.  (ECF No. 10 at PageID 49–50.)  He has a fifteen-month-old daughter who is a United States citizen.  (Id. at PageID 50.)  His family has missed his financial support for several months.  Thus, he has ties to the United States, he desires to remain, and, until recently, he expected to remain free from mandatory detention.

Given these facts, Arias Iriarte's detention without bond violated his liberty interest. Arias Iriarte is entitled to immediate release.  See Villafranca Lara v. Ladwig, No. 26-CV-02079-SHL-tmp, 2026 WL 401204, at *10 (W.D. Tenn. Feb. 12, 2026) ("Because ICE purported to detain [petitioner] under § 1225(b)(2)(A), which includes no provision for a bond hearing, the Court will not now order a bond hearing under § 1226(a).").[7]  This relief is especially appropriate

---

[6] Although Arias Iriarte was in state custody for aggravated assault in January 2026, he posted bond before being arrested by ICE.  (ECF No. 8-2 at PageID 42.)

[7] Contrary to Respondent's assertions otherwise (ECF No. 8 at PageID 34–35), release conditioned on a bond hearing is not appropriate here.  Because ICE purported to detain Arias Iriarte under § 1225(b), which includes no provision for a bond hearing, the Court will not now order a bond hearing under § 1226(a).  Instead, immediate release is the appropriate remedy for Arias Iriarte's deprivation of liberty.  See Cardona v. Ladwig, No. A203-803-130, 2025 WL 3722009, at *7 (M.D. Tenn. Dec. 3, 2025) ("Because Petitioner's rights to a bond hearing under § 1226(a) have been denied, '[a] bond hearing after the fact, by definition, would not and cannot cure that constitutional violation [and, although Petitioner's] release today cannot cure his loss of liberty since [November 3, the day he was detained], this remedy, relative to the procedural one

19

given the general practice of immigration courts, bound by <u>Yajure Hurtado</u>, to deny jurisdiction to hold bond hearings.  Thus, consistent with the Court's decision in <u>Godinez-Lopez</u>, and upon consideration of the record, Arias Iriarte's Petition is **GRANTED**.

## CONCLUSION

For the reasons stated above, Petitioner Arias Iriarte's detention without bond violates his rights to due process, and the Petition is **GRANTED**.  Respondent is **ORDERED** to release Arias Iriarte immediately.  Respondent is **ENJOINED** from pursuing Arias Iriarte's detention under 8 U.S.C. § 1225(b)(2)(A).  Respondent is further **ORDERED** to file a Status Report with this Court on or before May 18, 2026, to certify compliance with this Order.

**IT IS SO ORDERED,** this 12th day of May, 2026.

s/ Sheryl H. Lipman
SHERYL H. LIPMAN
CHIEF UNITED STATES DISTRICT JUDGE

---

of ordering a bond hearing, is the one that comes closest to doing so.'" (quoting <u>Yao v. Almodovar</u>, 25 Civ. 9982, 2025 WL 3653433, at *12 (S.D.N.Y. Dec. 17, 2025))).  After all, the Government may at any time detain an immigrant who is illegally present under § 1226(a), subject to a bond hearing, and thus it is not necessary for this Court to order one.  Respondent has that discretion, which he chose not to exercise in the first instance.  <u>See</u> 8 U.S.C. § 1226(a) ("On a warrant issued by the Attorney General, an alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States.").